IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER T. HARRELL,                                    No. CIV S-06-0849-MCE-CMK

        Plaintiff,

   vs.                                                              <u>FINDINGS AND RECOMMENDATIONS</u>

GUST KEPREOS, et al.,

        Defendants.

_____/

        Plaintiff brings this action for damages, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Pending before the court is plaintiff's motion for default judgment (Doc. 52).  In support of plaintiff's motion, he submitted his declaration, and the declarations of Kimberly Olson and Raymond Smith (Docs. 54 and 55).  A hearing on the matter was held before the undersigned on September 25, 2007, at which time the court took the testimony of plaintiff and Ms. Olson in support of plaintiff's motion.  Plaintiff was provided the opportunity to submit further documentary evidence in support of his damages claims, which he did on October 19, 2007, at which time the matter was submitted.

/ / /

/ / /

# I. BACKGROUND

## A. Procedural History

This action proceeds on plaintiff's first amended complaint (Doc. 16), filed on July 17, 2006. The defendants are: Gust Kepreos, Bruce Hull, William Warner, "Todd" Warner, Kenneth Bottoms, David Kirchubel, and Billy Warner. The case was originally filed in the District of Oregon, which concluded that it lacked personal jurisdiction over defendants. On plaintiff's appeal of that decision, the Ninth Circuit affirmed, but concluded that the district court abused its discretion by not considering whether the case could have been transferred to the Eastern District of California pursuant to 28 U.S.C. § 1631. The Ninth Circuit transferred the matter to this court.

In the District of Oregon, defendants were represented by counsel – James A. Wallan, Esq. – who entered an appearance on their behalf. Following transfer of the action to this court, Mr. Wallan moved for, and was granted, leave to withdraw as counsel for defendants because he is not admitted to practice law in California. In his declaration, Mr. Wallan stated that he informed defendants of the pendency of this action and advised them to consult with counsel in California.

On July 17, 2006, the court determined that the first amended complaint was appropriate for service on all seven defendants and directed plaintiff to submit to the court documents for service of process by the United States Marshall. Plaintiff complied and all defendants were personally served. Following expiration of the time for defendants to respond to the first amended complaint, plaintiff sought and obtained entry of default as to all defendants by the Clerk of the Court on July 17, 2007.

/ / /

/ / /

/ / /

/ / /

B. **Plaintiff's Evidence in Support of Damages**

Following the hearing on September 25, 2007, at which time plaintiff was unable to present any competent evidence to establish the measure of any damages, the court provided plaintiff an opportunity to submit additional documentary evidence of his damages and to request a supplemental hearing. While plaintiff did not request any further evidentiary hearing, he did submit documents to the court on October 19, 2007, in support of his damages claims. Plaintiff's submission consists of the following:

1. An August 10, 2000, permit from Southern Oregon University regarding plaintiff's enrollment in an exchange program with College of the Siskiyous;
2. Plaintiff's transcripts from College of the Siskiyous dated September 26, 2007;
3. An interest statement from SallieMae dated October 1, 2007, showing student loan debt and accrued interest;
4. A Bank of America credit line statement from August 2007;
5. Buy.com Visa statements for two separate accounts from August 2007;
6. A Chase MasterCard statement from August 2007;
7. A Juniper Bank credit line statement from February 2007; and
8. A newspaper article dated January 17, 2007, entitled "Absolute Immunity with Impunity?: Did the sheriff's department conceal federal felonies to protect their own?"

## II. STANDARDS FOR DEFAULT JUDGMENT

Whether to grant or deny default judgment is within the discretion of the court. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring

decisions on the merits when reasonably possible. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir 1986). Regarding the last factor, a decisions on the merits is impractical, if not impossible, where defendants refuse to defend. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Where defendants have failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. See Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam); see also Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001). The court does not, however, presume that any factual allegations relating to the amount of damages suffered are true. See Geddes, 559 F.2d at 560. Thus, the court has the responsibility of determining whether the complaint states a claim which can support the judgment. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). If a claim lacks merit, the district court does not abuse its discretion in denying default judgment. See Aldabe, 616 F.2d at 1092-93. The court also has the responsibility of ensuring that the amount of damages awarded is reasonable and demonstrated by the evidence. See Geddes, 559 F.2d at 560. In discharging its responsibilities, the court may conduct such hearings and make such orders as it deems necessary. See Fed. R. Civ. P. 55(b)(2).

### III. DISCUSSION

Under the standards outlined above, the first step in the analysis is to determine whether the facts outlined in the complaint legally entitle plaintiff to relief. If so, the next step is to determine whether plaintiff has established that defendants' actions – as established by the facts in the complaint with respect to each cognizable claim – caused plaintiff to suffer damage. If so, the final step is to determine the amount of damages plaintiff has proved. In the first amended complaint, plaintiff alleges claims based on the following state law theories: (1) assault; (2) battery; (3) willful infliction of emotional distress; (4) vandalism and destruction of personal

property; (5) interference with contractual obligation; (6) negligence; (7) nuisance; (8) breach of contract; (9) malicious prosecution; (10) intimidation and criminal threats; and (11) defamation. The court will discuss each of plaintiff's claims for relief (styled as "Counts"), as outlined in the first amended complaint, to determine whether plaintiff has stated a cognizable claim and, if so, whether he has proved damages.

**A.  Counts I, II, and XIV – Assault and Battery**

In Count I, plaintiff alleges:

> On or about June 7, 2004, on the common grounds of the Cove Mobile Villa mobilehome park. . . Defendant Kepreos, in retaliation for Plaintiff's assistance to Kimberly Olson regarding a wrongful eviction initiated by Kepreos against Ms. Olson, in an attempt to dissuade Plaintiff from providing further assistance to Ms. Olson, and in an attempt to dissuade Plaintiff from filing complaints with local authorities . . ., did assault Plaintiff by threatening him with physical injury while behaving in a physically menacing manner. . . .
>
> * * *
>
> The threats made by Defendant Kepreos were . . . calculated to cause, and did so cause, fear and apprehension to Plaintiff. . . .

Plaintiff seeks $15,000.00 in compensatory damages and $45,000.00 in punitive damages from defendant Kepreos in Count I. In Count II, plaintiff alleges:

> During the incident described in Count I, Defendant Kepreos did strike Plaintiff several times in his chest, meanwhile stomping his feet, and strangling him. These acts by Defendant Kepreos caused Plaintiff to suffer injury to his neck, feet, and legs, and damaged Plaintiff's shoes.

Plaintiff seeks $25,000.00 in compensatory damages and $100,000.00 in punitive damages from defendant Kepreos in Count II. In Count XIV, plaintiff alleges:

> On or about February 16, 2005, while washing his car windows in the front yard . . . Plaintiff was approached by Billy Warner, who began yelling at, and threatening Plaintiff because of Plaintiff's legal actions against the park, and against William Warner, Billy's father.
>
> After yelling at Plaintiff while making his approach, Billy Warner struck Plaintiff in his face, and shoved him to the ground, both of these acts causing injury to Plaintiff's face, side, leg, and foot. As a result of this incident, Plaintiff sought and obtained a restraining order against

5

Defendant Billy Warner.

Plaintiff seeks $15,000.00 in compensatory damages and $45,000.00 in punitive damages against defendant Billy Warner in Count XIV.

Under California law, civil assault is a demonstration of an intent by one person to inflict immediate injury on the person of another then present and is based on an invasion of the right of a person to live without being put in fear of personal harm. See Lowry v. Standard Oil Co. of Cal., 63 Cal.App.2d 1, 7 (2nd Dist. 1944); Cal. Civil Code § 43. The tort of assault is complete when the anticipation of harm occurs. See Kiseskey v. Carpenters' Trust for So. California, 144 Cal.App.3d 222, 232 (2nd Dist. 1983). The tort of battery under California law requires a violation of an individual's interest in freedom from intentional contact with his person without the person's consent. See Rains v. Superior Court, 150 Cal.App.3d 933, 938 (2nd Dist. 1984). Lack of consent is an essential element of battery. See id.

The court finds that the allegations in Count I, which the court takes as true, are insufficient to establish the tort of assault because plaintiff has not alleged that he was in fear of immediate or imminent bodily injury. Further, even if the court were to assume that the allegations established the tort of assault, plaintiff has not proved that he suffered any actual damages as a result of the conduct of defendant Kepreos alleged in Count I. Plaintiff has not established any measure of damages for emotional and psychological pain. In his declaration, plaintiff states that he takes Pepto Bismol and sleeping aids to cope with emotional and psychological pain. Plaintiff has not, however, provided any medical bills or other evidence that any emotional problems he suffers were caused by the conduct of defendant Kepreos as alleged in Count I. As to Count XIV, the court likewise finds that plaintiff has not set forth facts to establish that defendant Billy Warner completed the tort of assault because he has not alleged fear of imminent bodily injury.

/ / /

/ / /

With respect to two separate instances of battery, alleged against defendant Kepreos in Counts II and against defendant Billy Warner in Count XIV, the court finds that the facts alleged adequately establish the tort of battery. Specifically, plaintiff has alleged unauthorized contact. However, plaintiff has not proved any damages. While he alleges certain physical injuries, which the court accepts, there is no medical evidence to show the appropriate measure of damages resulting from the battery. The only indication of plaintiff's physical injuries is contained in the declaration of Raymond L. Smith provided by plaintiff in support of his request for default judgment. In that declaration, Mr. Smith states:

> I personally observed the bruises, swelling, and other marks on Peter Harrell's neck and face from the assaults committed against him by Defendant Kepreos and Billy Warner as described in the First Amended Complaint. I could tell by the way Mr. Harrell moved and winced that they were painful, and impeded his normal function. It took a few weeks for the injuries to subside.

The court accepts that plaintiff suffered actual injuries as a result of the conduct of defendants Kepreos and Billy Warner as alleged in Counts II and XIV. However, plaintiff has not provided any documentation which would allow the court to measure an award of money damages.

The next question is whether plaintiff is entitled to nominal damages. The deprivation of certain "absolute" rights that does not cause actual injury may be vindicated through the award of a nominal sum of money. See Cummings v. Connell, 402 F.3d 936, 942 (9th Cir. 2005). Thus, in an action for alleged violations of civil rights, where compensatory damages are not proved, nominal damages may be awarded to vindicate the deprivation of a constitutional right. In addition to civil rights violations, nominal damages may be appropriate under California law for the torts of trespass, see Consterisan v. Tejon Ranch Co., 255 Cal.App.2d 57, 60 (5th Dist. 1967), assault, see Liljefelt v. Blum, 33 Cal.App.721 (1st Dist. 1917) (per curiam), loss of publicity, see Ericson v. Playgirl, Inc., 73 Cal.App.3d 850, 859 (2nd Dist. 1977), as well as breach of contract, see id.. As the term implies, nominal damages is defined as a mere token or trifle. See Cummings, 402 F.3d at 943.

Assuming that nominal damages are appropriate under California law for the tort of battery where actual damages are not proved, the court finds that plaintiff is entitled to nominal damages of $1.00 for each of the two batteries committed upon him. Specifically, plaintiff is entitled to recover $1.00 from defendant Kepreos and $1.00 from defendant Billy Warner.

The final question concerns plaintiff's request for an award of punitive damages. Under California law, punitive damages are sometimes appropriate where no actual damages have been proved. See Lane v. Hughes Aircraft Co., 22 Cal.4th 405, 417 (2000). Three factors are relevant in the assessment of punitive damages: (1) the degree of reprehensibility of the act; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant. See Neal v. Farmers Ins. Exchange, 21 Cal.3d 910, 928 (1978). As to the second factor, the California Supreme Court stated that ". . . even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small." Id. As to the third factor, the California Supreme Court also has stated that punitive damages cannot be speculative. See Adams v. Murakami, 54 Cal.3d 105, 114 (1991). For this reason, evidence of the defendant's financial condition is a prerequisite to an award of punitive damages in order to ensure that it is not based on speculation but based on deterrent effect. See id. at 119. The burden of establishing the defendant's financial condition is on the plaintiff. See id.; see also Cal. Evid. Code § 500.

In this case, plaintiff has provided no evidence whatsoever to establish the defendants' financial condition. Therefore, the court could only speculate as to what award of punitive damages would deter the defendants' conduct. For this reason, the court finds that an award of punitive damages against defendants Kepreos and Billy Warner is not appropriate.

///

///

///

B.     **Counts III and XVI – Intimidation, Criminal Threats, and Willful Infliction of Emotional Distress**

In Count III, plaintiff alleges:

> The conduct of Defendant Kepreos, as set forth in Counts I and II above, was intended to dissuade and prevent Plaintiff from engaging in lawful conduct, in availing himself of due process of law, the free exercise of his civil rights, and was calculated to cause, and so did cause, Plaintiff to suffer extreme and lasting emotional and psychological pain and distress. . . .

Plaintiff seeks $5,000.00 in compensatory damages and $15,000.00 in punitive damages from defendant Kepreos in Count III. In Count XVI, plaintiff alleges:

> On or about May 15, 2006, Plaintiff was in the park visiting friends and conducting an investigation of an incident of physical assault upon a park resident on their behalf. During the investigation of the assault and battery, which involved Defendants William Warner, Todd Warner, and Billy Warner, Defendant Billy Warner videotape Plaintiff's car, and Plaintiff, meanwhile making threats to "get" and "take care of" Plaintiff, and saying the videotape "gives me all I need."
> These actions and statements, conducted and made in a belligerent and intimidating manner, caused Plaintiff, based upon the prior violence of Defendant Billy Warner towards Plaintiff, to fear for his personal security, and be fearful of associating with his friends in the park, assisting them with the investigation, and assisting them in filing restraining orders, etc., as may become necessary. . . .

Plaintiff seeks $5,000.00 in compensatory damages and $15,000.00 in punitive damages from defendant Billy Warner in Court XVI

Under California law, the elements of the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) intention to cause emotional distress; (3) severe emotional suffering; and (4) actual and proximate cause of emotional distress. See Kiseskey v. Carpenters' Trust for So. California, 144 Cal.App.3d 222, 229 (2nd Dist. 1983). The court finds that plaintiff has not alleged facts which would establish a prima facie claim of intentional infliction of emotional distress because plaintiff has neither alleged outrageous conduct nor severe emotional suffering. While plaintiff has alleged conduct by defendants which would be considered inappropriate, he does not allege conduct which is outrageous. Similarly,

plaintiff alleges generally that he has suffered emotional distress and pain which is lasting, but he does not allege that it is severe.  Further, plaintiff has not proved damages related to emotional distress caused by defendants' alleged conduct.  As with his assault and battery claims, plaintiff states that he takes Pepto Bismol and that he experiences physical symptoms, such as trouble sleeping, constant stress, anxiety, worries, and headaches.  But he has not provided any objective evidence of emotional or psychological problems.

### C. Counts IV and X – Vandalism and Destruction of Personal Property

In Count IV, plaintiff alleges:

> On or about June 3, 2004, Defendant Hull did "key" plaintiff's vehicle on the driver's side, and continuing onto the rear panel, causing some $800 in damage.

In Count X, plaintiff alleges:

> On or about August 22, 2004, as a result of a conspiracy between Defendants Gust Kepreos, Kenneth Bottoms, and David Kirchubel, Plaintiff's car was sprayed with noxious chemicals, which ate into and destroyed the paint job over the majority of the surface of the vehicle, causing approximately $2,000 in damage.

Assuming that plaintiff's allegations are true, as the court must, and assuming that they establish a prima facie tort claim, plaintiff has not provided the court with any evidence establishing the special damages listed in his complaint.  As outlined above, the court cannot presume on default that the allegations as to damages are true.  Plaintiff must prove damages and he has failed to do so as to the property damages alleged in Counts IV and X.  With respect to the financial information provided by plaintiff in his October 2007 submission, none of the statements are itemized and, thus, do not establish his property damage.  Plaintiff has not provided the court with any repair estimates or receipts establishing special damages in the amount of $2,800.00 as alleged.

///

///

///

     **D.**     **Count V – Interference with Contractual Obligations**

Plaintiff alleges:

> Defendants, from the period of April 28, 2004, through and including the current date, did engage in a pattern of harassment, malicious prosecution, intimidation, verbal abuse, abuse of process, attempted interference with civil rights by solicitation of perjury, commission of perjury, and breaches of contract . . . against Kimberly Olson, Plaintiff's disabled charge, with the intent to cause her emotional and psychological pain and distress and to attempt to get her to move from her home. . . . Ms. Olson has indeed suffered emotional and psychological pain and distress as a result of defendants' actions, and Plaintiff, as Olson's contracted Caregiver, had thereby been forced to expend additional effort and resources to fulfill his contract with Ms. Olson as described in item two (2) above. . . .

In "item two," plaintiff alleges:

> At all times material, . . . in exchange for housing, Plaintiff provided personal care and assistance to Kimberly Olson, a disabled person and resident of Unit #50 in the Cove Mobile Villa mobilehome park. . . .

Plaintiff seeks $4,500.00 in compensatory damages and $13,500.00 in punitive damages against unspecified defendants.

California law recognizes the tort of interference with contractual obligation. See Remillard-Dandini Co. v. Dandini, 46 Cal.App.2d 678, 680 (1st Dist. 1941). The tort requires a person to induce a third person not to perform a contract or not to enter into a contract that third person has or may have had with the plaintiff. See id. In such cases, the inducing person is liable for the damages caused by the conduct. See id. In this case, plaintiff alleges that he had a contract with Ms. Olson to provide caregiver services in exchange for housing. He also alleges that unspecified defendants made it more difficult for him to perform his obligations under the contract by engaging in harassment and other conduct calculated to cause emotional distress to plaintiff. These allegations simply do not establish the tort of interference with contractual obligation. Specifically, plaintiff has not alleged that defendants caused Ms. Olson not to perform under the contract (i.e., provide housing), or that defendants' conduct caused some third

11

1  party not to enter into a contract with plaintiff.

2  Even if plaintiff's allegations can be seen as establishing some kind of tort
3  recognized under California law, plaintiff has provided the court with no evidence which would
4  allow it to measure damage caused by defendants' conduct.  Specifically, there is no evidence
5  indicating additional money that was required to be spent because defendants made performance
6  of plaintiff's contract more difficult.  Further, as discussed above, plaintiff has not provided any
7  evidence establishing his alleged emotional injuries.

8      **E.**    **Count VI – Willful Negligence**

9  Plaintiff alleges:

> Defendant Gust Kepreos, in spite of repeated complaints and notices by Plaintiff, Plaintiff's charge, Kimberly Olson, and tenants of the park concerning the violent and improper behavior of Defendant Kepreos, and the tortuous [sic] and criminal behaviors of the remaining defendants, refused to cease his objectionable, dangerous, and malicious behaviors, or to exercise his authority as manager of the park to discipline or curtail the actions of the other defendants.  This lack of action being a proximate cause of Plaintiff's injuries as set forth herein.  Defendant Kepreos is therefore liable for all of these acts as managing agent of the mobilehome park, as well as the acts compelled, instigated, or encouraged by his as set forth in this Complaint . . .

16  Plaintiff seeks compensatory damages of $120,000.00 against defendant Kepreos.

17  As with plaintiff's other claims, even assuming his allegations make out a prima
18  facie claim of negligence, plaintiff has not proved that defendants' conduct caused him to suffer
19  any damages.

20      **F.**    **Count VII – Willfully Maintaining Nuisance**

21  Plaintiff alleges:

> Defendant Gust Kepreos . . . in an effort to annoy and harass plaintiff and his charge . . . refused to provide sufficient trash dumpsters. . . for the refuse generated by the tenants, and repeatedly failed to keep said dumpsters in a sanitary and cleanly manner . . . which has led to highly offensive smells, as well as infestations of flies, bees, and other vermin attracted to them.  Further, Defendant Kepreos willfully located the dumpsters within 35' of space number 50. . . where Plaintiff's charge . . . resided, and where Plaintiff resided during the school year, and this proximity creates excessive traffic and noise from people using the

dumpsters at all hours of the day and night.  The dumpsters for the entire park were located next to #50 instead of being distributed about the park, or located on the common ground at the front of the park.

Plaintiff seeks $2,500.00 in compensatory damages and $7,500.00 in punitive damages from defendant Kepreos.

Again, the court will assume that the allegations are true and that they establish the tort of nuisance under California law.  Plaintiff has not proved that he suffered any damage as a result of defendants' conduct in creating a nuisance with respect to the dumpsters.

### G. Counts VIII and IX – Breach of Contract

In Count VIII, plaintiff alleges:

> Plaintiff, pursuant to the rental contract of Kimberly Olson and Cove Mobile Villa, executed by agent/manager Gust Kepreos, and the "park rules" incorporated therein, is a "guest" . . . and is required to abide by all rules and therein contractual conditions in the same manner as any other resident.  Plaintiff is therefore entitled to the protections and benefits afforded him by that status under the contract contained in the rules.  All residents and guests at the park are parties to the contract embodied in the park rules.
>
> * * *
>
> The actions of Defendants Kepreos and the other defendants as set forth in this Complaint are direct violations of that contract and the covenant of habitability in that Gust Kepreos, his agents, and/or the other defendants have failed to properly maintain the grounds and services, have allowed nuisances to exist unabated, have engaged in behavior that poses a direct threat to the health, safety, and security of the Plaintiff, have interfered with the civil rights and due process of the Plaintiff, have slandered and libeled Plaintiff, have failed to enforce and/or abide by the rules of the park, and in general, have harassed, annoyed, assaulted, badgered, intimidated, tormented, threatened, and initiated baseless legal proceedings and criminal complaints against Plaintiff . . . .

Plaintiff seeks $20,000.00 in compensatory damages and $60,000.00 in punitive damages from unspecified defendants in Count VII.  In Count IX, plaintiff alleges:

> Plaintiff . . . hereby alleges that under California law all mobilehome parks are required to have rules and abide by certain regulations, that Cove Mobile Villa did, at all times material herein, have a set of rules for the conduct of residents and guests, and that Defendants Gust Kepreos, Bruce Hull, William Warner, Todd Warner, Billy Warner,

13

> David Kirchubel, Kenneth Bottoms, and/or Does 1-3, by engaging in harassment of, assault of, battery of, threats to, and willful annoyance of the Plaintiff, destruction of Plaintiff's property, willfully interfering with Plaintiff's contract and duties with Kimberly Olson, and disruption of Plaintiff's quiet enjoyment of the premises . . . are in substantial and multiple breach of the park rules, and thus are in breach of the contract embodying them.

Plaintiff seeks $20,000.00 in compensatory damages and $60,000.00 in punitive damages against unspecified defendant in Count IX.

At the outset, the court notes that a breach of contract claim sounds in contract law, not the law of torts. Thus, while torts may give rise to general and special damages, breaches of contract give rise to an entirely different measure of damages. Specifically, in contract actions, the plaintiff's damages are usually measured in terms of providing the plaintiff the benefit of the bargain. In some cases, where such damages are insufficient, equitable relief in the form of injunctions may be ordered. In this case, plaintiff essentially alleges that defendants' conduct breached a landlord-tenant contract to which he is a third-party beneficiary. In particular, he alleges a violation of the covenant of habitability. As with his other claims, however, plaintiff has provided the court with absolutely no proof as to the measure of damages caused by defendants' conduct.

    **H.**    **<u>Counts XI and XV – Malicious Prosecution</u>**

In Count XI, plaintiff alleges:

> On or about June 22, 2004, Defendant Kepreos did file an accusation in the Siskiyou County Superior Court against Plaintiff seeking a restraining order. This accusation and application . . . was without merit, frivolous, and initiated . . . to force Plaintiff to expend resources in order to appear and defend against it, to dissuade Plaintiff from engaging in legal conduct and assisting Ms. Olson in her issues with Cove Mobile Villa, and to inflict extreme emotional and psychological pain and distress upon Plaintiff.
>
>     * * *
>
> . . . [A] hearing was conducted on the matter on September 10, 2004, and Kepreos' application for a restraining order against Plaintiff was denied.

14

Plaintiff seeks $5,500.00 in compensatory damages and $25,000.00 in punitive damages from defendant Kepreos on Count XI. in Count XV, plaintiff alleges:

> On or about October 26, 2005, Defendant Todd Warner did file an accusation in the Siskiyou County Superior Court against Plaintiff seeking a restraining order. This accusation and application . . . was without merit, frivolous, and initiated by Defendant Todd Warner to force Plaintiff to expend resources in order to appear and defend against it, to dissuade Plaintiff from engaging in legal conduct, pursuing his claims in court against the other defendants . . ., assisting Kimberly Olson in her legal claims. . ., and in order to inflict extreme emotional and psychological pain and distress upon Plaintiff.
>
> * * *
>
> . . . [A] hearing was conducted on the matter on December 21, 2005, and Todd Warner's application for a restraining order against Plaintiff was denied.

Plaintiff seeks $5,500.00 in compensatory damages and $25,000.00 in punitive damages from defendant Todd Warner on Count XV.

To recover damages for malicious prosecution, the plaintiff must establish the following: (1) institution of an earlier action; (2) that ended in his favor; (3) that was brought with malice; (4) but without probable cause; and (5) that caused the plaintiff to suffer compensable damage. See Chauncey v. Niems, 182 Cal.App.3d 967, 973 (2nd Dist. 1986). In this case, plaintiff alleges that defendants Kepreos and Todd Warner, on separate occasions, instituted proceedings seeking restraining orders against plaintiff. He also alleges that these actions ended in his favor when defendants' applications were denied. Plaintiff further alleges that the prior actions were without merit. While plaintiff alleges that the restraining order petitions were filed in order to force plaintiff to unnecessarily expend resources, he does not allege that defendants had no other proper reasons for initiating the proceedings against him. And, even if he did, he has not proved any damages as a result of the restraining order petitions. As with his other claims, while plaintiff alleges that he suffered emotional distress and associated pain, he has not proved any damage. There are no medical records, doctors' opinions, receipts, or the like to establish damages let alone that damages were caused by defendants' conduct.

1     **I.**     **Count XVII – Slander, Libel, and Defamation**

2     In Count XVII, plaintiff alleges:

> Plaintiff . . . alleges that from the period of on or about April 28, 2004, through and including the current date, the defendants, and each of them, have made and continue to make knowingly false claims and statements, as well as claims and statements made with reckless disregard for the truth, regarding Plaintiff to members of the general public, and to law enforcement agencies with the intent to cause injury and harm to Plaintiff and plaintiff's reputation in the community and among his associates.
> In making these false claims and statements, the defendants have caused the false statements to be published and disseminated to and by third parties to Plaintiff's general and special damages.

Plaintiff seeks $15,500.00 in compensatory damages and $45,000.00 in punitive damages from all defendants.

Under California law, defamation (which includes both libel and slander) is an invasion of the interest in reputation. See <u>Ringler Associates, Inc. v. Maryland Cas. Co.</u>, 80 Cal.App.4th 1165, 1179 (1st Dist. 2000). The tort requires the intentional publication of a statement of fact which is false, unprivileged, and has the natural tendency to injure or which causes special damage. See <u>id.</u> Libel is written defamation; slander is oral defamation. See <u>id.</u> Because plaintiff has not alleged what the defamatory statements were, the court cannot presume that they were such as to naturally have the tendency to injure plaintiff's reputation. Therefore, to prevail, plaintiff must prove that the defamatory statements made by defendants actually caused him special damages. Plaintiff has not done so.

## IV. CONCLUSION

In this case, while defendants have defaulted for failing to appear in the action, and while this default has the effect of their liability for cognizable claims being conclusively established, plaintiff must still meet his burden of proving damages caused by defendants' conduct. He has failed to do so. Therefore, the court cannot recommend entry of any award of compensatory damages. As to plaintiff's battery claims, however, the court finds that nominal

damages in the amount of $1.00 against defendant Kepreos and $1.00 against defendant Billy Warner is appropriate. The court, however, does not finds that punitive damages are appropriate on either of the battery claims because plaintiff has failed to meet his burden of establishing the defendants' financial condition.

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for entry of default judgment (Doc. 52) be granted in part, as outlined herein;

2. Plaintiff be awarded nominal damages of $1.00 against defendant Kepreos;

3. Plaintiff be awarded nominal damages of $1.00 against defendant Billy Warner; and

4. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 3, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE